JOANOS, Judge.
This is an appeal from a final order of the Unemployment Appeals Commission (“Commission”) affirming the decision of the appeals referee that the claimant, Sterling, is entitled to unemployment benefits. The employer, Ordnance Research, Inc., contends the Commission erred in affirming the finding that “the claimant was discharged from his job, but not for misconduct connected with his work.” We reverse and remand for further proceedings.
The claimant, Sterling, was the manager of the Driftwood Motel from January, 1980, until his arrest for grand theft and his discharge in March, 1983. When Sterling applied for unemployment compensation benefits the claims examiner denied the claim on the basis that Sterling had been arrested and was awaiting trial on a charge of theft from the Driftwood and was therefore ineligible for benefits. Sterling appealed the claims examiner’s determination.
At the initial hearing before the appeals referee, the investigating and arresting officer, Keeler, testified that upon his arrest, Sterling admitted taking about $1000 a month for each of several months. Sterling testified he had told Keeler there might be a discrepancy of about $1000 a month in the books, but he had not confessed to stealing the money. He said the discrepancy resulted from his practice of leaving keys for guests who arrived after 10 p.m. rather than checking them in and obtaining advance payment, and sometimes they left without paying. If he had them in the books already he would transfer funds, i.e., when someone else checked in he would not register them, but would use the money they paid to cover the guest that had “skipped out.” He said the employer was not aware of this practice.
The referee received in evidence depositions of employer Waite, housekeeper Daniels, and Keeler. According to Waite, he was informed in summer 1982 that Sterling was spending unusually large amounts of cash and that Sterling had said he had been taking money from the Driftwood. In August, 1982, Waite instructed a housekeeper, Daniels, to keep a log of rooms occupied and cleaned. When this log was compared with Sterling’s daily work sheets and deposit slips, there were numerous discrepancies and it appeared about $1900.00 in room rentals for one month had not been accounted for in Sterling’s records. Waite presented this evidence including the documentation to police. The appeals referee reversed the claims examiner’s determination and found that Sterling was entitled to unemployment benefits because employer failed to prove the motel money was missing or that Sterling had taken any money, therefor there was no proof he was discharged for misconduct connected with work.
The employer appealed to the Commission, which vacated and remanded the referee’s order because the referee had failed to resolve a conflict between the testimony of the arresting officer and that of Sterling as to whether Sterling, upon arrest, admitted taking the money or had merely said there might be a discrepancy in the books of one thousand dollars a month. Since *956 claimant had offered the Commission evidence that the embezzlement charge had been nolle prossed in the interim between the appeals referee’s decision and employer’s appeal to the Commission, the Commission also directed the appeals referee to “convene an evidentiary hearing for the purpose of affording the employer an opportunity to examine the proffered evidence and offer rebuttal thereto.”
On remand, the referee conducted a new hearing with testimony from employer Waite, housekeeper Daniels, and Sterling. Waite described the information he had provided the police and offered into evidence a written summary of discrepancies between the housekeeper’s and Sterling’s records, concluding the discrepancies amounted to a $1900.00 shortage for the month of August, 1982. Sterling again testified the discrepancies resulted from his occasional failure to collect room rent in advance when guests arrived late at night, giving them the opportunity to leave without paying. He would leave the guests a note as to their room assignment so that they would not awaken him, even though his apartment on the premises had a doorbell connected to the motel front office. He said he worked from 8 a.m. to 10 p.m. and felt he did not have to stay up all night to check in guests. Sterling said this resulted in four or five “skip-outs” a week. He admitted this was not really a good motel management practice, but said he could not watch the place twenty-four hours a day. Sterling had not informed his employer of the losses resulting from this management practice. He said he covered up the “skip-outs” by taking money from a subsequent cash-paying customer, making no record of that customer, and recording the transaction as though the money had been paid by the skip-out. He did this in order to “keep the books straight.” He did not think it necessary to note the non-paying customers and he never told anyone about this practice. He said he was not told of any policy about obtaining payment in advance. Waite had testified that it was motel policy that no one was to be given a key until the rent was paid in advance.
As a result of this second hearing, the appeals referee again reversed the examiner, found that the employer had failed to prove Sterling embezzled money and thus failed to prove misconduct, and awarded benefits. The referee found that the testimony of the arresting officer as to an alleged confession by claimant was vague and unsure, and claimant’s statement that he did not confess to stealing the money was deemed more credible. This resolved the credibility question which had been unanswered in the referee’s first order. The referee also noted that the criminal charges against Sterling had been nolle prossed in the interim between the first and second orders. Employer again appealed to the Commission, which affirmed on the basis that the order was in accord with the essential requirements of the law.
On appeal to this court, employer argues it was unnecessary for employer to show Sterling had stolen or embezzled money in order to show he was discharged for misconduct, because Sterling admitted engaging in management practices which caused the business to lose hundreds of dollars each month, and to falsifying records as a result of which employer could not discover the loss. More specifically, employer argues that by failing to require payment in advance from late-arriving guests, falsifying motel records, and preventing employer from discovering the losses, and accepting cash from paying guests without recording those transactions or reporting receipt of the money, claimant engaged in “either a deliberate violation or disregard of standards of behavior which the employer has the right to expect of him, or it was negligence of such a degree or recurrence as to manifest evil design or to show an intentional and substantial disregard of the employee’s duties and obligations to his employer,” see Section 443.036(24), Florida Statutes (1982 Supp.). Employer contends the appeals referee erroneously interpreted the law in failing to find work-connected misconduct on this basis, and the Commission erred in affirming by finding the ref *957 eree’s decision in accord with the essential requirements of the law.
Appellees assert the Commission correctly affirmed the referee’s order because it is based on competent substantial evidence, and that the referee’s legal conclusion that claimant was discharged for reasons other than misconduct connected with his work was a reasonable and correct application of the law to the facts of this case. Appellees argue that before considering the question whether the alleged behavior constituted misconduct, it must be determined whether claimant was actually discharged as a result of the alleged misconduct. According to appellees, the referee did not err in refusing to look for misconduct other than embezzlement or stealing, since that was the actual basis for termination. In other words, they argue that the appeals referee could only find that the employer discharged Sterling because of alleged stealing or embezzlement, not because of his management practices, previously unknown to employer, of not requiring advance payment of late arrivals and covering up “skip-outs” in his record keeping by manipulating the funds and the documents. They state that the evidence as to business practices was put on at the second hearing, on remand from the first Commission order, and that this is further evidence that these practices were not the real reason for the discharge. Appellees contends the referee was not authorized on remand to inquire beyond the initial allegation of misconduct, the embezzlement.
The first Commission order authorized the referee to hold another evidentia-ry hearing, in light of the nolle prosequi proffered by claimant, “for the purpose of affording the employer an opportunity to examine the proffered evidence and offer rebuttal thereto.” The submission of additional evidence by the employer as to Sterling’s alleged misconduct in the form of his management practices was within the scope of this remand. The employer could attempt to show that even though Sterling’s conduct may not have risen to the level required to charge him with criminal conduct or to convict him of criminal charges, it did amount to work related misconduct that would defeat payment of unemployment benefits. We think the appeals referee was authorized on remand to go beyond the question whether embezzlement had occurred as a result of claimant’s conduct, and should have weighed the evidence of claimant’s practices in making findings of fact. Actually, some of the evidence of claimant’s business practices which led to the suspicious discrepancies in the books was brought out in claimant’s testimony at the initial hearing before the appeals referee.
In addition, we reject the argument that because employer did not know prior to discharging claimant the exact nature of claimant’s conduct which resulted in losses to the business, there can be no finding that he was discharged for work related misconduct. The referee should have considered whether claimant’s policy of failing to register guests, permitting them to leave without paying for their stay, and then covering up these “skip-outs,” which occurred at a rate of four or five a week and resulted in substantial losses to the employer, constituted misconduct connected with his work. It was this conduct by claimant which resulted in the losses to the employer, led the employer to realize the records were being manipulated somehow and to believe there had been a theft or embezzlement, and precipitated claimant’s discharge.
In summary, we have determined that the Commission erroneously affirmed the decision of the referee, who failed to properly consider the facts of the case and apply the law to those facts and make a determination of whether claimant’s conduct amounted to misconduct connected with his work. Therefor, we reverse and remand to the Commission for remand to the referee and a determination of whether claimant’s above described management practices, which resulted in large losses to his employer, as a result of which he was *958 discharged, constituted work connected misconduct.
Reversed and remanded.
SHIVERS, J., concurs.
ERVIN, J., dissents with opinion.